jury be not requested, still the court may, in its discretion, ascertain it, or submit the matter to a jury. But under no circumstances can a final judgment be entered for the forfeiture, or penalty of the bond, in the cases mentioned in this section. The district court, having rendered judgment in this case for the penalty of the bond on which the suit is brought, without having ascertained the sum justly due to the United States in the way pointed out by the above section, committed an error for which this court would reverse the judgment, if the defendants had taken out a writ of error to that judgment. But as the only record before the court is that of the proceedings upon the new declaration and plea directed by the district court, I shall proceed to examine those, and the judge's charge to the jury.

There is no uncertainty as to the debt claimed by the United States. That is ascertained by the mode pointed out by the act of congress. The only question before the district court was, whether, in point of law, the sureties for William White were liable for the sums due by him as agent for the navy pension fund, and the privateer pension fund, to settle which it would seem that a jury was unnecessary, and I think improper. Still, if the charge was right, the court will not reverse the judgment for that error, as the jury was requested so to act by both parties.

Upon the question of law, I think the sureties were not liable for the sums due by William White as agent for the two last mentioned funds. The bond upon which this action is founded recites in the condition, that William White had been appointed by the secretary of war agent for paying invalid pensioners belonging to the state of Pennsylvania, and is, that he shall faithfully execute his agency. The fund for paying invalid pensioners, and those for paying the navy and privateer pensions, are perfectly distinct, raised from different sources, and the administration and management of them are vested in different persons. The first is committed to the superintendence of the secretary of war, who is directed by law to take a bond from his agents in a penalty not exceeding $5000 for the faithful discharge of their duties. The navy pension fund was formed by a pledge of all moneys accruing to the United States from the sale of prizes, and a further pledge of the public faith, to make it sufficient for the purposes to which it was destined; and so much of the fund accruing from prizes which was paid prior to the 26th of March, 1804, was placed under the management of the secretaries of the treasury, war and navy departments. That which was paid afterwards was to be disbursed by the treasury, into which it was to be paid, pursuant to warrants from the secretary of the navy. The fund destined for disabled seamen on board of privateers, their widows and children, was raised from a source distinct from the other two, was paid into the treasury, and directed

to be disbursed according to the directions of the secretary of the navy. William White, who was appointed by the secretary of war agent for paying the invalid pensioners of Pennsylvania, was also appointed agent for paying the navy pensioners, by the commissioners of that fund, and agent for paying the privateer pensioners, by the secretary of the navy. Whether he gave bond to those commissioners, and to the secretary of the navy, for the faithful performance of his duties, does not appear; nor can I find any law which required such bonds to be given. But nothing can be more clear in law, in reason, and in justice, than that the sureties for his fidelity in paying away the money placed at his disposal by the secretary of war to invalid pensioners are not his sureties for his faithful disbursement of moneys put into his hands by the commissioners of the navy fund, or by the secretary of the navy for the use of privateer pensioners. It forms no part of the engagement into which they entered, and the case is in no respect varied by the circumstance that William White happened to be appointed, by the superintendents of the three funds, agent in relation to each of them. A surety can never be bound beyond the scope of his engagement; and therefore a surety for the faithful service of B as clerk to C, who afterwards enters into partnership with D, is not liable for unfaithful conduct to C and D. 3 Wils. 532.

The acknowledgment by the sureties in their letter to the comptroller of the 7th of May, 1821, that the balance of $3373 74 cents was due, cannot affect this question, since it is obvious that they made that acknowledgment under a mistake, which the letter of the comptroller of the 22d of December, 1820, led them into. Neither is it affected by the mortgages which they gave, as the present suit is not on the equity side of the court to foreclose the equity of redemption. If it had been, the court, upon the facts appearing in this case being disclosed in that, would have dismissed the bill. I am, therefore, of opinion, that the sureties in this case are not liable to the United States for the sum of $1029 55 cents, and the interest, which is claimed as due by William White on account of the navy pension, and privateer pension funds; and as the claim against him, on account of the invalid pension fund has been satisfied, the judgment of the district court, which is in favour of the defendants, must be affirmed.

---

UNITED STATES (WHITE v.). See Case No. 17,558.

UNITED STATES v. WHITEHEAD. See Case No. 14,626.

---

## Case No. 16,687.

### UNITED STATES v. WHITTAKER.

[The case reported under above title in 2 Tex. Law J. 166, is the same as Case No. 16,688.]